IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**RANDOLPH DEXTER,**
        **Petitioner,**

**v.**                                                                **Case No.  5:07cv231/RH/MD**

**FLORIDA PAROLE COMMISSION,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

**Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 5).  Respondent has filed an answer with attachments. (Docs. 12, 13). Petitioner has replied. (Doc. 17). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY

**On October 25, 1973, petitioner was convicted in the Circuit Court of Volusia County, Florida ("Volusia County Circuit Court"), of Breaking and Entering with**

Intent to Commit a Felony.  He was sentenced on November 20, 1973 to three years imprisonment.  (Doc. 13, Ex. A).[1]

On March 1, 1976, petitioner was convicted in the Volusia County Circuit Court of Burglary.  He was sentenced on March 9, 1976 to four years imprisonment.  (Ex. B).

On October 9, 1978, petitioner was convicted in the Volusia County Circuit Court of Resisting Arrest with Violence.  He was sentenced to two years imprisonment.  (Ex. C).

On November 14, 1978, petitioner was convicted in the Volusia County Circuit Court of Kidnapping and Robbery with a Firearm.  He was sentenced on November 21, 1978 to two concurrent terms of life imprisonment.  (Ex. D).

On December 28, 1978, petitioner was convicted in the Circuit Court of Putnam County, Florida, of Escape.  He was sentenced on March 1, 1979 to ten years imprisonment to run consecutive "with any other sentence now being served."  (Ex. E).

On August 4, 1999, petitioner was granted parole by the Florida Parole Commission ("FPC").  (Ex. F).  He was released from prison to parole supervision on September 28, 1999, subject to conditions of parole for life.  (*Id.*).

On April 5, 2004, petitioner was convicted in the Volusia County Circuit Court of False Imprisonment.  He was sentenced to eighteen months imprisonment to run concurrent "with any active sentence being served.  (Ex. G).

Following parole revocation proceedings, on September 22, 2004 the FPC issued an Order revoking petitioner's parole.  (Ex. H).

On January 24, 2005, petitioner received his initial parole interview.  The parole examiner recommended a presumptive parole release date ("PPRD") of December 4, 2016.  (Ex. I).  At the FPC meeting held on March 9, 2005, the FPC

---

[1]Hereafter, all references to exhibits will be to those attached to Doc. 13, unless otherwise noted.

established petitioner's PPRD to be February 4, 2024.  (*Id.*).  Petitioner sought administrative review of the establishment of his PPRD on April 22, 2005.  (Ex. J).  At the FPC meeting held on May 24, 2005, the FPC found no cause to modify petitioner's established PPRD.  (Ex. K).

On August 17, 2005, petitioner filed a petition for writ of mandamus in the Circuit Court of Leon County, Florida, seeking to have the court order the FPC to recalculate his PPRD.  (Ex. L).  Petitioner raised the following claims:

I.     "Improper Salient Factor."  Petitioner argued that in establishing his new PPRD, the FPC improperly calculated his salient factor score by assigning one point for Item #5 (Number of Probation, Parole or MCR Revocations).  (Ex. L, p. 3; Ex. N, p. 3).

II.    "Erroneous Salient Factor."  Petitioner argued that in establishing his new PPRD, the FPC improperly calculated his salient factor score by assigning one or more points for Item #1 (Number of Prior Criminal Convictions.)  (Ex. L, p. 5; Ex. N, p. 4);

III.   "Improper Aggregation of Expired Sentences."  Petitioner challenged the FPC's application of Rule 23-21.011, Fla. Admin. Code relating to the aggregation of expired commitments, arguing that the Rule was not in place when petitioner committed the offenses leading to his life sentences.  (Ex. L, p. 6; Ex. N, p. 5);

IV.    "Erroneous Matrix Time Range B# Commitment."  Petitioner argued that in establishing his new PPRD, the FPC erred in assessing more months in 2005 for the same aggravating factors originally applied in 1980, and for considering certain convictions.  (Ex. L, p. 8, Ex. N, p. 7);

V.     "Improper Matrix Range C# Commitment."  Petitioner argued that in establishing his new PPRD, the FPC improperly went above the parole examiner's recommendation concerning the assessment of months for various aggravations.  (Ex. L, p. 9; Ex. N, p. 8); and

VI.    "Improper Consideration of Parole-Ineligible Sentences."  Petitioner argued that in establishing his new PPRD, the FPC improperly considered his parole-ineligible 2003 cases as indicators of parole prognosis.  (Ex. L, p. 10, Ex. N, pp. 8-9).

The FPC responded, and petitioenr filed a reply.  (Exs. M and N, respectively).  On March 10, 2006, the circuit court issued an order denying the petition, stating:

> THIS CAUSE was considered on the Petition for Writ of Mandamus filed by the plaintiff, the response filed by defendant Florida Parole Commission, and all other papers filed in the court file in this case. After reviewing the contents of the court file, I find as follows:

> Plaintiff challenges the Florida Parole Commission's March 9, 2005 action establishing his new presumptive parole release date (PPRD), raising six claims.

> First, plaintiff argues that the Commission improperly assigned a salient factor point of "1" for item #5 of the salient factor score for number of probation, parole or MCR revocations.  This claim lacks merit because the plaintiff's record shows that he had a prior parole revocation on March 25, 1976, for which 1 point was applied to item #5. This result is in harmony with Rule 23-21.007(5), Fla. Admin. Code.

> Second, plaintiff contends that the Commission improperly assigned a salient factor point of "1" for item # 1 of the salient factor score for one or two prior criminal convictions.  Plaintiff's record shows that he in fact had three criminal convictions prior to the convictions resulting in his Life sentences.  Plaintiff's 1973 three year sentence has expired, his 1974 four year sentence has expired, and his 1978 two year sentence has expired.  Plaintiff argues that the Commission is precluded from counting present state convictions as priors (however plaintiff is not presently serving these sentences), and that pursuant to Rule 23-21.011, Fla. Admin. Code, all commitments are present commitments despite their expired status.  I find that Rule 23-21.011(3) requires the Commission to treat expired commitments as present commitments only for purposes of aggregation, and not for salient factor scoring purposes, and plaintiff's claim therefore lacks merit.

> Third, plaintiff argues that Rule 23-21.011, Fla. Admin. Code, as it relates to aggregation of expired commitments, violates *ex post facto* because the rule was not in place when he committed the offenses leading to his Life sentences.  I find that there is no retrospective application as the administrative rule in question is applied to plaintiff's <u>present</u> penal status and does not in any way alter the original sentence imposed.  Consequently, there is no *ex post facto* violation.

*See* <u>Britt v. Florida Parole and Probation Commission</u>, 417 So.2d 1079 (Fla. 1st DCA 1982); <u>Lopez v. Florida Parole and Probation Commission</u>, 410 So.2d 1354 (Fla. 1st DCA 1982), *US. cert. den.* 459 U.S. 905, <u>Wuolard v. Florida Parole and Probation Commission</u>, 426 So.2d 66 (Fla. 1st DCA 1983); <u>Jordan v. Florida Parole and Probation Commission</u>, 423 So.2d 450 (Fla. 1st DCA 1982). *See also* <u>Dobbert v. Florida</u>, 423 U.S. 282, 53 L. Ed. 2d 344, 97 S. Ct. 2290 (1977), *reh den.* 434 U.S. 882.

Fourth, plaintiff contends that the Commission erred in assessing more months in 2005 for the same aggravating factors originally applied in 1980. Plaintiff is mistaken. The plaintiff's 1980 PPRD was established using the following aggravations:

> Robbery with a Firearm - 32 months
> Escape - 19 months
> Resisting Arrest with Violence - 33 months

The plaintiff's 2005 PPRD was established using the same aggravations and the same number of months, in addition to new aggravations based on Plaintiff's 2003 convictions. Plaintiff's claim thus lacks merit. *See* <u>Carter v. Florida Parole Commission</u>, 902 So.2d 868 (Fla. 2005).

Fifth, plaintiff contends that the Parole Commission improperly imposed more months in aggravation than recommended by the parole examiner. Although plaintiff speaks about "matrix time range" in this claim it is clear that he is challenging the Commission's assessment of 60 months for aggravations # 4, 5, and 7 (Exhibit J, p. 3). Plaintiff's claim lacks merit because a hearing examiner's PPRD recommendations are not binding on the Commission. *See* <u>Harvard v. Florida Parole Commission</u>, 782 So.2d 904 (Fla. 1st DCA 2001) (where the Commission has set only one PPRD, the Commission is not bound by the recommendation of the hearing examiner); *accord* <u>Dornau v. Florida Parole and Probation Commission</u>, 420 So.2d 894 (Fla. 1st DCA 1982); *see also* § 947.172(3), Fla. Stat. (2003).

Sixth, plaintiff contends that Section 921.002(E), Florida Statutes, prohibits the application of Chapter 947 (parole) to his parole-ineligible 2003 cases. In fact, plaintiff is correct. However, precisely because these are parole ineligible offenses, there is nothing in the Florida Statutes to prevent the Commission from considering his new convictions as indicators of parole prognosis and therefore using them in aggravation of his PPRD. *See* Rule 23-21.010, Fla. Admin. Code. Concurrent convictions, not used in establishing a salient factor score,

are proper aggravating factors.  <u>Lamar v. Florida Parole & Probation Commission</u>, 430 So-2d 948 (Fla. 1st DCA 1983).

The First District Court of Appeal has held that "(a)bsent a violation of any statute or rule, this Court can review no further under mandamus, as the writ will not lie in any review by this Court of the discretionary acts of the Commission."  <u>Baker v. Florida Parole and Probation Commission</u>, 384 So-2d 746, 748 (Fla. 1st DCA 1980).  Plaintiff has failed to identify any statute or rule which was violated in establishing his PPRD. Under the circumstances as presented, mandamus does not lie. Therefore, it is

ORDERED AND ADJUDGED that the Petition for Writ of Mandamus is DENIED.  No motion for rehearing or reconsideration is allowed.

(Ex. O).

Petitioner sought review of circuit court's denial order by filing a petition for writ of certiorari in the Florida First District Court of Appeal ("First DCA").  (Ex. P). The FPC responded, and petitioner filed a reply.  (Exs. Q and R, respectively).  On November 29, 2006, the First DCA denied the certiorari petition. *Dexter v. Florida Parole Comm'n*, 946 So-2d 17 (Fla. 1st DCA 2006) (Table) (copy at Ex. S).  Petitioner filed a motion for rehearing, which was denied on January 12, 2007.  (Exs. T and U, respectively).  The mandate issued on January 30, 2007.  (Ex. V).

Petitioner received a subsequent interview on November 15, 2006.  At the FPC meeting held on December 20, 2006, the FPC reduced petitioner's PPRD by 12 months due to his satisfactory institutional adjustment.  (Ex. W).  Petitioner's PPRD was established as February 4, 2023.

Petitioner commenced the instant habeas corpus proceeding on Septmeber 21, 2007.  (Doc. 1).  He filed an amended petition on October 17, 2007.  (Doc. 5).  He raises two grounds for relief:

    1.    "Violation of Due Process & Equal Protection.  Petitioner's Unexecuted Grant of Parole was Rescinded without the Minimal Requirements of Due Process and Equal Protection."

    2.    "Violation of 28 U.S.C. Section 2254(D)(1) 'Contrary to Clause.'"

(*Id.*, pp. 4-5).[2]  **Respondent contends petitioner failed to exhaust his state court remedies with respect to both of his claims; therefore, the petition should be dismissed without prejudice.  (Doc. 13, pp. 14-18).  In the alternative, respondent contends petitioner is not entitled to federal habeas relief because his claims seek review of only state law matters and furthermore, are without merit.  (Id., pp. 19-32). Petitioner responds that both claims were exhausted in the state court proceedings. (Doc. 17).**

# DISCUSSION

## <u>Exhaustion</u>

**It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."** *Duncan v. Henry*, **513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting** *Picard v. Connor*, **404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.**

---

[2]References to page numbers are to those that appear in the electronic docket.

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."   *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the

federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with

---

[4]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.[6]  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

[6]*See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

<u>Petitioner's Grounds for Relief</u>

      Ground 1.   <u>"Violation Of Due Process & Equal Protection. Petitioner's Unexecuted Grant Of Parole Was Rescinded Without The Minimal Requirements Of Due Process And Equal Protection."</u>

In support of this ground for relief, petitioner asserts the following:

      The procedures that have been applied during petitioner's initial and subsequent parole interviews have not comported with the procedural requirements of the parole statute which specifically addressed decisions related to his parole. In conjunction with its implementing F.A.C. Rules, a liberty interest is created where it mandates a grant of parole that respondents have arbitrarily rescinded.

(Doc. 5, p. 6). In his reply, petitioner clarifies his claim as follows:

      Petitioner submits that if consideration for his parole eligible sentences are conducted pursuant to Section 947.168(1-2), as asserted and as Rule 23-21.018, F.A.C. requires, when read in context, petitioner was paroled to the incarceration portion of parole ineligible sentence. The expressed language "mandates" that a grant of parole shall result in the initiation of service of parole ineligible sentence, . . ." The word "shall" . . . commands a duty to perform, and if no order exists which grants petitioner parole to the incarceration portion of his prole ineligible sentence, then grant of parole was summarily rescinded without the minimum requirement of due process. The grant of parole was not a matter left to the respondent's discretion. Because it is mandated by the legislature, the respondent's discretion lies only in determining, during a subsequent review, if there are grounds which would negatively impact the petitioner's release after he has

**satisfactorily completed his parole ineligible sentence.   Section 947.168(3-4) and F.A.C. Rule 23-21.018(1)(c) and (c)(1-2).**

(Doc. 17, pp. 15-16) (citations omitted).  Petitioner states he exhausted this claim by raising it in his petition for writ of mandamus and petition for writ of certiorari.  (Doc. 5, p. 6).

Respondent contends Ground 1 of the instant petition is unexhausted because in state court, petitioner challenged the FPC's action in setting his new PPRD following his return to prison as a parole violator and with a new sentence. He did not challenge a purported rescission of a grant of parole.  Furthermore, petitioner did not allege that he was entitled to an immediate parole as he does here. Rather, he conceded in his mandamus petition that "he has no vested right to parole."  (Doc. 13, pp. 14-15 (citing Ex. L, p. 1)).

In response petitioner acknowledges that unlike here, the claims asserted in his mandamus petition urged recalculation of certain scores affecting his PPRD – he did not assert he was entitled to immediate parole release.  (Doc. 17, pp. 4, 15). He contends, however, that he "was not seeking, per se, a recalculation of his PPRD;" rather he "sought the issuance of writ of mandamus for the expressed purpose of compelling . . . the Florida Parole Commission to perform a duty required by law," meaning, to "consider[ ] . . . his parole . . . in accordance to Section 947.168, Florida Statute."  (*Id.*, pp. 4, 15).  He further explains that when he asserted that he had "no vested right to parole," he "was merely conceding to the fact that the privilege of parole release come with its conditions.  However, there does exist a right to a legal and proper consideration for this privilege that <u>is</u> fully guaranteed under both state and federal constitutions."  (*Id.*, p. 12).  Petitioner presents an exhaustive review of the arguments made in his mandamus petition, arguing at

length why this court should find that he fairly presented the instant due process and equal protection claims to the state courts. (*Id.,* pp. 4-18).[7]

The undersigned has carefully reviewed petitioner's state mandamus and certiorari petitions, and concludes that the constitutional claim petitioner is raising here was not fairly presented to the state courts.  In his mandamus petition, petitioner challenged the consideration and scoring of certain factors in setting his new PPRD, and sought "correction" of the FPC's alleged errors.  He did not contend that subsequent to his 2004 parole revocation the FPC issued an order granting parole and subsequently rescinded it in violation of the Due Process Clause.  Nor did petitioner contend that the mandatory language of FLA. STAT. § 947.168 and FLA. ADMIN. CODE r. 23-21.018 operated as a grant of parole entitling him to release.  To the extent the latter claim was argued in his mandamus reply, it was argued solely in state law terms, not as a violation of Federal due process or equal protection.  Based on the foregoing, the undersigned finds that petitioner failed to exhaust his state court remedies with respect to Ground 1 of the instant petition.

---

[7]For example, petitioner argues that:  (1) the introduction to his mandamus petition "was framed in terms so particular as to call to mind a specific constitutional right" and "infer[s] that respondents, in determinations [sic][for petitioner's parole has violated his right to this privilege when they have exceeded the boundaries of 'rule[s], statutory and constitutional law[s]' during the consideration for his parole," (doc. 17, p. 8); (2) the claim headings in his mandamus petition "clearly bring to mind federal law issues and standards that are familiar to both the respondents and the state courts who, therefore, could easily recognize that included within the claims of 'improper consideration' for petitioner's parole a claim for denial of due process," (*id.*); (3) in the third claim of his mandamus petition petitioner specifically referenced "due process" and, given his *pro se* status, the state court should have liberally construed this claim as arising under the due process and equal protection clauses of the Fourteenth Amendment, (*id.*, p. 9); (4) in the sixth claim of his mandamus petition petitioner stated that his expired and parole-ineligible sentences were "improper considerations" which "fairly presented a claim for denial of due process and equal protection of the laws governing both his parole eligible and parole ineligible sentences," (*id.*, p. 10); (5) petitioner's sixth claim of his mandamus petition "involved questions of state and federal law where petitioner was alleging that his rights under the provisions of substantive law w[ere] being violated by the imposition of a penalty not provided for," and "although petitioner relied on state caselaw to support his claim, they are functionally identical to the federal constitutional standard," (*id.*, pp. 11-12); and (6) that his present due process and equal protection claim varies very little in substance to the sixth claim of his mandamus petition "where petitioner relied on the same parole statute in this case as was urged upon respondents and the state court in his efforts to forward the proposition . . . that the respondents had exceeded, inter alia, the constraints of 'statutory' law in determinations for his parole and to support the claim that use of his 2003 offenses was improper," (*id.*, p. 14).

Notwithstanding petitioner's failure to exhaust, federal habeas relief should be denied because the claim is without merit.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Respondent asserts, the record establishes, and petitioner's reply does not dispute, that the FPC did not issue an order granting petitioner parole following the 2004 revocation of parole.  Petitioner's contention that the mandatory language of the parole statute creates a constitutionally-protected liberty interest in parole is wrong as a matter of law.

In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment.  *See American Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999).  Due process interests in the prison setting:

> will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *see, e.g., Vitek* [*v. Jones*, 445 U.S. 480, 493 (1980)] (transfer to mental hospital), and *Washington* [*v. Harper*, 494 U.S. 210, 221-222 (1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Alternatively, state-created procedures can give rise to a protected liberty interest for purposes of procedural due process when those procedures place substantive limitations upon official discretion.  *Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir. 2000); *see also  Olim v. Wakinekona*, , 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (if the relevant statute "places no substantive limitations on official discretion" in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated).

In the context of parole, the United States Supreme Court has held that there is no due process right to parole; accordingly, an administrative decision on

whether to grant an inmate release on parole, however serious the impact, does not automatically invoke due process protection.  *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979).   However, since the Due Process Clause applies when the government deprives a person of a protected liberty interest, due process protections are invoked where a statute creates a legitimate expectation of parole.  *Id.*, 442 U.S. at 7-8; *Hunter v. Florida Parole & Probation Comm'n*, 674 F.2d 847, 848 (11th Cir. 1982). A statute which provides for the mere possibility of parole, however, does not create a liberty interest protected by due process for the reason that it depends wholly on the unfettered exercise of discretion by a board or other authority.  *Greenholtz, supra.*  Florida's parole statutes are an example of such statutes, and have been held not to create a legitimate expectation of parole, leaving due process inapplicable to the procedure for granting parole.  *Hunter, supra* (citing *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982)); *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986) ("There is no constitutional right to parole in Florida.").[8]  Where there is no liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995) (quotations omitted).  As the Eleventh Circuit made plain in *Staton*:

> Much of the Florida statutory scheme [concerning parole] is written in mandatory terms.  That language, however, is qualified by the exercise of the Commission's discretion.   The setting of the presumptive parole release date and the decision whether that date is to become the effective parole release date are matters committed ultimately to the discretion of the Commission.  Even if the inmate's conduct has been satisfactory, Florida law specifically grants the Commission the power to authorize the effective parole release date or to deny or delay release.

---

[8]However, once the inmate has actually been granted parole by the Florida Parole Commission, then the inmate clearly has a legitimate liberty interest which may not be taken without an individualized due process hearing.  *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

> **Since the decision whether to release an inmate on parole is a matter committed to the discretion of the Commission without the mandate of statute, no entitlement to or liberty interest in parole is created by the Florida statutes.**

*Id.* at 688;[9] *see also Meola v. Dep't of Corrections*, 732 So.2d 1029, 1034 (Fla. 1998) ("In Florida, parole-eligible inmates do not have a legitimate expectation of liberty or right to expect release on a certain date even after they have been given a specific Presumptive Parole Release Date (PPRD).").[10]   Because there is no recognized liberty interest to parole created by Florida Statutes, petitioner's procedural due process claim must fail.

Petitioner's equal protection claim is also without merit.  "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."  *Sweet v. Secretary, Dep't of Corrections*, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (citing *Jones v. Ray,* 279 F.3d 944, 946-47 (11th Cir. 2001) and *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).  Petitioner's equal protection claim necessarily fails

---

[9]The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions prior to October 1, 1981, and all former Fifth Circuit Unit B decisions after October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[10]However, the Eleventh Circuit has held, even when there is not liberty interest in parole, that a state parole board treated a prisoner arbitrarily and capriciously in violation of due process by relying upon false information to deny parole.  *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991).  In *Monroe*, the court found that a state parole board's admitted use of false information was arbitrary and capricious and, thus, constituted a violation of the Due Process Clause.  *Monroe*, 932 F.2d at 1442 (holding that the discretion given to the Alabama Parole Board in granting parole does not permit the Board to knowingly rely on false information contained in an inmate's file to deny him parole).  The court relied on *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982), which stressed that "absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts." *See Damiano, supra*, 785 F.2d at 932 (finding that the inmate "raised a colorable due process claim with respect to the use of procedurally flawed disciplinary reports in modifying a PPRD.").  In this case, however, petitioner has not alleged that the FPC knowingly and intentionally relied upon false information.  Thus, his allegations do not fit within the holding of *Monroe*.

because he has not alleged, let alone established, that he was treated differently from similarly situated prisoners or that he was treated differently on account of invidious discrimination tied to a constitutionally protected interest such as race, religion, or national origin.  *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration . . . of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *Sweet*, 467 F.3d at 1319 (affirming dismissal of petitioner's equal protection claim because petitioner failed to establish that he was treated differently from similarly situated prisoners or that he was treated differently on account of invidious discrimination); *see also Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir. 1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

Based on the foregoing, the undersigned concludes that petitioner's first ground for relief is without merit, and federal habeas relief should be denied.[11]

Ground 2.    "Violation of 28 U.S.C., Section 2254(D)(1) 'Contrary to Clause.'"

In support of this ground for relief, petitioner asserts the following:

---

[11]Additionally, although petitioner couches his claim in terms of due process and equal protection, he essentially challenges the FPC's action on state law grounds, arguing that the FPC failed to comply with state statutes and state administrative regulations.  Federal habeas relief is available to correct only constitutional injury.  28 U. S. C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

> The respondents and the state courts failed to consider key arguments of petitioner's petitions which applied in support of his asserted facts rules of clearly established U.S. Supreme Court precedents which he alleged entitled him to relief resulting in conclusions that were arbitrary and contravened those precedents.

(Doc. 5, p. 6).  Petitioner expounds on this claim no further.  He asserts he raised this claim in state court by presenting it in his petition for writ of mandamus and petition for writ of certiorari.  (*Id.*, p. 7).

Respondent contends petitioner is not entitled to relief on this claim because it is vague and conclusory in that petitioner fails to provide an explanation and fails to allege what arguments he believes the state courts failed to consider. Respondent further submits that the claim is without merit because the state courts addressed the claims raised in petitioner's mandamus petition and, to the extent petitioner argued new matters in his mandamus reply or certiorari petition, the claims were not presented in a procedurally correct manner and were therefore procedurally barred from review.  (Doc. 13, pp. 30-32).

Petitioner's reply provides no additional insight as to what Federal law arguments or United States Supreme Court precedent the state court failed to consider. (Doc. 17, p. 18).  The undersigned has thoroughly reviewed petitioner's pleadings in the state mandamus and certiorari proceedings.  Giving petitioner the benefit of all doubt, the only conceivable references to Federal law were petitioner's infrequent mention of "due process" and his argument in Issue III of his mandamus petition based on *ex post facto* principles.  Regardless of whether petitioner believes his arguments were adequately addressed, the state court's denial of relief was neither contrary to, nor an objectively unreasonable application of, clearly established Supreme Court precedent.

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[12]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a

---

[12]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Petitioner cannot prevail on his argument that the state court's adjudication of his claims violated clearly established Federal law with regard to due process. As previously discussed, petitioner has no due process protections with regard to his parole review, including the calculation of his PPRD.  Therefore, his challenge to the FPC's actions on due process grounds must fail.  *See Damiano*, 785 F.2d at 931-32 (holding that prisoner's due process claim that the FPC used improper factors in aggravating his score during calculation of his PPRD did not rise to the level of a constitutional violation; "even though the PPRD is binding on the Commission, . . . it does not create a liberty interest or require due process protections"); *Hunter*, 674 F.2d at 848 (rejecting a claim that the FPC improperly calculated a PPRD and, thus, violated due process, holding that because there was no liberty interest in parole, there was no due process violation); *see also Green v. McDonough*, No. 4:06cv588/RH/WCS, 2007 WL 496749, at *3 (N.D. Fla. Feb. 13, 2007) ("The claim that the Commission denied due process in setting or improperly aggravating [petitioner's] PPRD does not entitle [him] to relief as he has no liberty interest in his PPRD and no entitlement to due process.").

With regard to any alleged *ex post facto* violation, the law is well settled that a challenge to the "parole decision process" or guidelines by which the FPC decides who should or should not be released on parole is not a viable claim.  In *Paschal v. Wainwright*, 738 F.2d 1173 (11th Cir. 1984), the court considered a challenge to the 1978 Objective Parole Guidelines Act ("Parole Act") that required the FPC to enact

guidelines that would be used in making parole release decisions, including the establishment of a presumptive release date and whether release should be granted. 738 F.2d at 1175.   After setting forth the clearly established Supreme Court precedent with regard to *ex post facto* claims involving state action, the Eleventh Circuit explained that "[a] law which is merely procedural and does not add to the quantum of punishment . . . cannot violate the *ex post facto* clause even if it is applied retrospectively." *Paschal*, at 1176 (citing *Weaver v. Graham*, 450 U.S. 24, 32-33 & n. 17, 101 S.Ct. 960, 966 & n. 17, 67 L.Ed.2d 17 (1981)).   The court rejected the habeas petitioner's challenge, holding that where the petitioner, at the time he committed murder that led to his incarceration, was on fair notice that if he received a life sentence he would be subject to parole at the discretion of the FPC, a consequence which was not changed by the subsequently enacted Parole Act, and where the guidelines thereunder merely stated and rationalized the exercise of the FPC's discretion, the petitioner suffered no legislative increase in punishment by the FPC's application of the Act in setting his PPRD, so that its application did not violate the Constitution's *Ex Post Facto* Clause.   *Paschal* has been consistently followed.   *See Damiano v. Florida Parole and Probation Comm'*, 785 F.2d at 933 (citing *Paschal* in rejecting an *ex post facto* challenge and holding that "[w]hen appellant was convicted in 1974, parole was a matter of complete discretion.   It remains so even under the objective parole guidelines of 1978, since parole is still ultimately a matter of discretion."); *Jonas v. Wainwright*, 779 F.2d at 1577 (concluding the *Ex Post Facto* Clause was not violated when the FPC applied the "objective parole guidelines that had been amended after [petitioner] was incarcerated.").

In the instant case, petitioner asserted in his state mandamus reply that his claim was not that application of the Parole Act violated *ex post facto* principles, but that application of FLA. ADMIN. CODE r. 23-21.011, instead of the former rule, FLA. ADMIN. CODE r. 23-21.11, violated those principles.   However, a change that merely alters the FPC's considerations for suitability for parole is not violative of the *Ex Post Facto* Clause because it neither works to the prisoner's detriment nor

constitutes "a criminal or penal law." *Kelly v. Southerland*, 967 F.2d 1531, 1532 (11th Cir. 1992) (citing *Dufresne v. Baer*, 744 F.2d 1543, 1547 (11th Cir. 1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985)).  Guidelines are just that, guidelines for making decisions and reining in discretion. *Paschal*, 738 F.2d at 1181; *Kelly*, 967 F.2d at 1532.  In two recent cases, this court has rejected the same *ex post facto* argument petitioner advances here (one of which was raised by petitioner in a civil rights case).  *See Dexter v. Florida Parole Comm'n*, 2006 WL 354223 (N.D. Fla. Feb. 14, 2006) (No. 4:05cv271/MP/EMT); *Robinson v. David*, 2006 WL 5176971 (N.D. Fla. Feb. 8, 2006) (No. 4:05cv282/MP/WCS).

   The crux of petitioner's claim appears to be his disagreement with the manner in which the FPC makes it parole decisions.  Federal habeas relief is not available to redress decisions of state parole commissions, or even state courts, that do not run afoul of the United States Constitution, even though a petitioner may believe the decisions are incorrect under state law.  *See supra* note 11.  Saying that a state decision maker failed to consider a petitioner's arguments, merely because the decision maker rejected the arguments without issuing a written explanation that was to petitioner's satisfaction, does not change the outcome.[13]

   Accordingly, it is respectfully RECOMMENDED:

   1.  That the amended petition for writ of habeas corpus (doc. 5) be DENIED.

---

[13]To the extent petitioner's second ground for relief can be construed as challenging the process afforded him in state collateral proceedings challenging the FPC's establishment of his PPRD, such an argument does not state a claim cognizable on federal habeas.  It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").

**2.  That the clerk be directed to close the file.**

**At Pensacola, Florida this 17th day of September, 2008.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**